**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| LARRY McMILLAN, | : | **CIV. NO. 17-13435 (RMB)** |
| Plaintiff | : | |
| v. | : | **OPINION** |
| C. RAY HUGHES, Administrator Southern State Correctional Facility, *et al.*, | : | |
| Defendants | : | |

**BUMB,** DISTRICT JUDGE

Plaintiff Larry McMillan, a prisoner presently confined at South Woods State Prison in Bridgeton, New Jersey, filed this civil rights complaint under 42 U.S.C. § 1983 challenging the legality of a strip search at Southern State Correctional Facility. (Compl., ECF No. 1.) Plaintiff also filed an application to proceed *in forma pauperis* ("IFP") (ECF No. 1-1), which establishes his eligibility to proceed without prepayment of fees under 28 U.S.C. § 1915.

When a prisoner is permitted to proceed without prepayment of the filing fee or when the prisoner pays the filing fee for a civil action and seeks redress from a governmental entity, officer or employee of a governmental entity, 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) require courts to review the complaint and *sua sponte* dismiss any claims that are (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek

monetary relief against a defendant who is immune from such relief. For the reasons discussed below, Plaintiff's complaint may proceed in part.

I. *Sua Sponte* Dismissal

Courts must liberally construe pleadings that are filed *pro se*. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Id. (internal quotation marks omitted). "Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making." See Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339-40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom, Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York, 30 Fordham Urb. L.J. 305, 308 (2002)).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly,

2

550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.) Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

II. DISCUSSSION

A. The Complaint

Plaintiff alleged the following in his complaint:

> 1. On December 17, 2015, I, Larry McMillan, was the victim of civil rights violations, from officers at Southern State Correctional Facility in an incident that included discriminatory profiling, racial discrimination and physical intimidation in violation of my right to be free from cruel and unusual punishment and equal protection of the law as guaranteed by the Fourteenth

3

> Amendment to the U.S. Constitution at the hands of multiple officers who both insulted and mentally violated me through tactics of intimidation, and humiliation, while I was being stripped searched [sic]. This search violated my constitutional right to privacy of my genitals and other private areas because it was not conducted under the rules of 10A nor under the guidelines of PREA, I have suffered mental and emotional injuries, as well as the violation of my constitutional rights due to the manner in which these officers, indifferent to the rules, law, or my rights conducted the strip/cavity search of my body.
>
> …
>
> 4. The derogatory remarks from officers and staff were both unprofessional and against the State and Federal laws, just as the disparaging of my religious requirement of trimming all of the excessive hair from one's privates is against the law.
>
> 5. I seriously thought they were going to kill me as they had promised which is why I still feel stressed, afraid, and always ill at ease around other officers.

(Compl., ECF No. 1 at 6.)

Plaintiff named as a defendant C. Ray Hughes, Administrator of Southern State Correctional Facility, because "Defendant did nothing to prevent the actions against me." (Compl., ECF No. 1 at 4.) Plaintiff alleges that he notified Hughes "of the behavior of the officers and plaintiff's fear of potential harm because of their behavior and attitudes towards him." (Id.)

Plaintiff also named as a defendant Sgt. John Doe#1, Senior Corrections Officer, alleging he "violated my rights by allowing strip search in a non-PREA compliant manner while I was in plain sight of other inmates and staff not involved in the search; never corrected or stopped SCO Officers conducting the search to behave more professionally." (Compl., ECF No. 1 at 4.)

Plaintiff alleges John Doe#2, Senior Corrections Officer,

> assisted in searching me and insulting me[,] during the search he told John Doe#3 to look at this bitch with bald nuts, causing the other officer to respond by laughing. When I turned to see who he was, he responded by saying "What the fuck are you looking at", so I kept my head down and asked "Why am I being searched in front of other inmates?" To which he responded, "You got a problem, shut the fuck up and do as you were told." Not only was I insulted as a result of this incident, but I felt afraid for my safety because of the threatening actions and tones from the guards.

(Id. at 4-5.)

Plaintiff alleges the third defendant, John Doe#3, Senior Corrections Officer "was the one who was laughing at my nakedness and threatening me for asking why I was being searched. During this incident, I felt humiliated, degraded, and afraid for my safety. This search was not done within the guidelines of 10A." (Id. at 5.)

Plaintiff alleges that he filed grievances about the incident,

5

> advising Administration of threats being received from officers and comments made by inmates because of the incident, requesting help to alleviate the situation; nothing was done. After the incident further inquiries, remedies, and grievances were filed in an attempt to effectuate change in the policies of the facility and to exhaust all previously asserted grievances, rather than answering my grievances in a manner reflective of the issues I was instead transferred to another facility.

(Compl., ECF No. 1 at 5.)

Plaintiff alleges violation of his rights under the New Jersey and United States Constitutions, particularly the First, Eighth and Fourteenth Amendments of the U.S. Constitution, violation of the New Jersey Civil Rights Act, and violation of New Jersey Administrative Code 10A:3-5.7(c), 1, 2; 10A:3-5.8(a)(b) and 10A3-5-8.2(g). (Id. at 6.) For relief, Plaintiff seeks declaratory judgment and monetary damages. (Id. at 7-8.)

    B.    <u>Claims under 42 U.S.C. § 1983, the New Jersey Civil Rights Act and the United States and New Jersey Constitutions</u>

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects … any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

"The [New Jersey Civil Rights Act] NJCRA was modeled after 42 U.S.C. § 1983 and '[c]ourts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983.'" Coles v. Carlini, 162 F. Supp. 3d 380, 404–05 (D.N.J. 2015) (quoting Chapman v. New Jersey, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009)). This Court will construe the NJCRA claims as analogous to their federal counterparts.

"The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (quoting Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998)).

1. Eighth Amendment Failure to Protect

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832-33 (1970) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). "[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. at 834. The inmate must also show that the prison official was deliberately indifferent to his health or

7

safety. Farmer, 511 U.S. at 834. "Deliberate indifference" in this context is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012) (quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001.)) Finally, the inmate must show the official's deliberate indifference caused him harm. Bistrian, 696 F.3d at 367.

Plaintiff alleges that he told the warden about the behavior of the corrections officers who strip searched him and that the warden did nothing to protect him. The Court infers that Plaintiff told the warden that one or more of the officers performing the strip search threatened to kill him, as he alleges in the complaint.[1]

Plaintiff has not shown that the warden's alleged indifference caused him harm because he did not allege that the officers did anything to him after the strip search. Although Plaintiff alleges the warden did nothing to protect him, he also alleges he was transferred to another prison. It is reasonable to infer Plaintiff was transferred to protect him from the threats

---

[1] Plaintiff alleged, "I seriously thought they were going to kill me as they had promised." (Compl., ECF No. 1 at 6.) Plaintiff did not describe the threat to kill him or what made him believe the threat would be acted on.

8

made against him. Plaintiff has not stated a cognizable failure to protect claim under the Eighth Amendment.

### 2. First Amendment Free Exercise of Religion

> The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I. Only beliefs which are both "sincerely held' and 'religious in nature' are protected under the First Amendment. *DeHart [v. Horn]*, 227 F.3d [47], 52 [(3d Cir. 2000) (en banc)].

Sutton v. Rasheed, 323 F.3d 236, 250–51 (3d Cir. 2003), as amended (May 29, 2003). Assuming Plaintiff held a sincere religious belief that required him to shave his genital area, he does not allege that a prison regulation prevented him from doing so.

The Court infers that Plaintiff is alleging the officers who humiliated him based on his religious practice dissuaded him from practicing his religion. One incident of verbal harassment by corrections officers is insufficient to constitute government action prohibiting the free exercise of religion. See Thompson v. Ireland, C.A. No. 13-150 Erie, 2014 WL 4187088, at *5 (W.D. Pa. Aug. 21, 2014) (idle threats and verbal harassment based on a prisoner's adherence to the Muslim faith are not enough to show interference with right to free exercise of religion). Therefore, Plaintiff has not stated a First Amendment Free Exercise Claim.

9

### 3. Fourteenth Amendment Equal Protection Claim

"The Equal Protection Clause requires that all people similarly situated be treated alike." Whitehead v. Wetzel, 720 F. App'x 657, 662 (3d Cir. 2017) (per curiam) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). Plaintiff alleges the strip search at issue involved discriminatory profiling and racial discrimination. He did not explain these allegations any further. His allegation that the strip search involved discriminatory profiling and racial discrimination is a legal conclusion unsupported by any factual allegations. See Twombly, 550 U.S. at 555 ("courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). This claim is dismissed without prejudice.

### 4. Eighth Amendment Cruel and Unusual Punishments Clause

The Eighth Amendment of the United States Constitution may be implicated by a prison strip search. A strip search may constitute cruel and unusual punishment when it is "undertaken maliciously or for the purposes of sexually abusing an inmate." Parkell v. Danberg, 833 F.3d 313, 336 (3d Cir. 2016) (quoting Crawford v. Cuomo, 796 F.3d 252, 258 (2d Cir. 2015)). Plaintiff does not allege that the strip search was performed for malicious purposes but

that it was performed in a humiliating manner. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (excessive use of physical force in a prison may violate the Cruel and Unusual Punishments Clause where force is used to maliciously and sadistically cause harm.)

The Third Circuit has held that infliction of emotional distress can violate the Eighth Amendment where it produces an injury of the same severe magnitude as in cases involving physical harm, and if it was inflicted in the same wanton and unreasonable manner. Renchenski v. Williams, 622 F.3d 315, 338 (3d Cir. 2010). Although the comments allegedly made to Plaintiff by John Does #2 and #3 while they strip-searched him were offensive and, by their nature, intended to humiliate him, the emotional injury caused by this single incident is not of the same magnitude of physical injuries that inflict wanton and unnecessary pain on a prisoner.

Plaintiff also makes a generalized claim that the defendants threatened to kill him, but without more information about the alleged threat, the Court cannot conclude that it was sufficiently serious to violate the Eighth Amendment. See Roberts v. Balicki, Civ. Action No. 11-1793 (RMB), 2011 WL 6176330, at *6 (D.N.J. Dec. 12, 2011) (generally verbal threats not coupled with brandishing a weapon are not sufficient to state an Eighth Amendment violation). Therefore, the Eighth Amendment claim is dismissed without prejudice.

2.  Fourth Amendment

The Fourth Amendment is also implicated by a prison strip search. Florence v. Board of Chosen Freeholders of County of Burlington, 566 U.S. 318, 339 (2012). In Florence, the Court held that a visual body cavity search of all arriving detainees that were to be admitted to the general population, regardless of the circumstances of the arrest, the suspected offense, or the detainee's behavior, demeanor, or criminal history was a reasonable strip search policy under the Fourth Amendment. Id. at 324. Here, however, Plaintiff is not challenging the policy permitting his strip search.

In dicta in Florence, the Supreme Court noted concerns that correctional officers would engage in intentional humiliation and other abusive practices in performing body cavity searches of pretrial detainees but did not have to reach the issue in that case. Id. at 339 (citing *Hudson [v. Palmer]*, 468 U.S. [517] at 528 [1984] (["I]ntentional harassment of even the most hardened criminals cannot be tolerated by a civilized society") and Bell v. Wolfish, 441 U.S. 520, 560 (1979)). In Bell, the Court acknowledged that "on occasion a security guard may conduct the [body cavity] search in an abusive fashion…. Such an abuse cannot be condoned. The searches must be conducted in a reasonable

manner." Bell, 441 U.S. at 560 (citation omitted). "[I]nmates maintain a reasonable expectation of privacy in their bodies, and an unreasonable search of the body may therefore be unconstitutional." Russell v. City of Philadelphia, 428 F. App'x 174, 178 (3d Cir. 2011) (per curiam) (citing Bell 441 U.S. at 558-60)); Watson v. Sec. of Pennsylvania Dep't of Corr., 436 F. App'x 131, 136 (3d Cir. 2011) (per curiam) (strip search conducted in abusive fashion may violate Fourth Amendment).

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Bell, 441 U.S. at 559.

Plaintiff asserts the strip search at issue violated New Jersey Administrative Code 10A:3-5.7(c), 1, 2; 10A:3-5.8(a)(b) and 10A3-5-8.2(g); which provide as follows:

> (c) A strip search shall be conducted:
>
> 1. At a location where the search cannot be observed by unauthorized persons;
>
> 2. In a professional and dignified manner, with maximum courtesy and respect for the inmate's person;

NJ ADC 10A:3-5.7(c)(1), (2);

> a) A body cavity search shall be conducted on an inmate when the custody staff member in charge is satisfied that a reasonable suspicion exists that contraband will be found in the inmate's body cavity.
>
> (b) In the event the custody staff member in charge has reasonable suspicion to believe that contraband is being concealed in the inmate's body cavity, the inmate shall immediately be escorted to the infirmary of the correctional facility and ordered to remove the contraband. The custody staff member in charge shall advise the inmate that medical assistance is available to the inmate for removal of the contraband.

NJ ADC 10A:3-5.8(a), (b);

> g) The custody staff member in charge shall prepare a written report of the results of a body cavity search that shall be made part of the inmate's record and shall include, but is not limited to, the following information:
>
>> 1. A statement of facts indicating reasonable suspicion for the search;
>>
>> 2. The name of the custody staff member in charge who authorized the search;
>>
>> 3. The name(s) of the custody staff member(s) present during the search and the reason(s) for his or her presence;
>>
>> 4. The name(s) of the person(s) conducting the search;
>>
>> 5. An inventory of any item(s) found during the search; and
>>
>> 6. The reason(s) for use of force, if applicable.

NJ ADC 10A:3-5.8(g).

Plaintiff's allegations that corrections officers, John Doe#2 and John Doe#3, made degrading comments about his body and threatened him during a strip search performed in front of other inmates and staff not involved in the search, is sufficient to state a claim that the search was unreasonable in violation of the Fourth Amendment. This claim may proceed against John Doe#2 and John Doe#3. The summons and complaint, however, cannot be served on unidentified individuals. Therefore, Plaintiff shall have 90 days to submit an amended complaint identifying John Doe#2 and John Doe#3. If plaintiff cannot discover the identities of John Doe#2 and John Doe#3, he may submit to the Court a request for a subpoena under Federal Rule of Civil Procedure 45(c)(2), describing a prison official whom he believes has the ability to produce documents that would identify John Doe#2 and John Doe#3, together with any information that would help identify those defendants, for example, where they were on duty at the time of the strip search.

The Court notes Plaintiff did not specifically allege that the defendants performed a body cavity search without reasonable suspicion, although he asserts the defendants violated regulations governing body cavity searches. If Plaintiff wishes to pursue his claims of an unreasonable body cavity search, he should file an

amended complaint supporting his conclusion that defendants violated NJ ADC 10A:3-5.8(g).

Plaintiff seeks to hold John Doe#1 liable for "allowing strip search in a non-PREA compliant manner while I was in plain sight of other inmates and staff not involved in the search; never corrected or stopped SCO Officers conducting the search to behave more professionally." The Court infers from the complaint that John Doe#1 was a supervisor of John Doe#2 and John Doe#3.

To state a § 1983 claim against a supervisor, a Plaintiff must allege facts establishing that the supervisor "'participated in violating the plaintiffs' rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.'" Santiago v. Warminster Tp., 629 F.3d 121, 129 (3d Cir. 2010) (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)). Plaintiff did not allege John Doe#1 was present during the search or that he participated in the search or directed John Does 2 and 3 to violate Plaintiff's rights. Plaintiff did not plead sufficient facts to establish John Doe#1's liability. This claim is dismissed without prejudice.

C.  Claim that Strip Search was not PREA Compliant

Plaintiff's claim that his strip search was not PREA compliant does not in itself state a cause of action. See Bowens v. Wetzel,

674 F. App'x 133, 137 (3d Cir. 2017) (per curiam) ("Plaintiff may not attempt to enforce statutes or policies that do not themselves create a private right of action [including PREA] by bootstrapping such standards into a constitutional deliberate indifference claim.") Plaintiff's allegations that his strip search did not comply with PREA are however relevant to the reasonableness of the strip search under the Fourth Amendment and may be considered in that context.

III. CONCLUSION

For the reasons stated above, the Court grants Plaintiff's IFP application, permits the § 1983 claim for violation of the Fourth Amendment protection against unreasonable searches and the parallel claim under the New Jersey Civil Rights Act to proceed, and dismisses the remaining claims in the complaint without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

An appropriate order follows.

DATE:  August 16, 2018

                                      s/Renée Marie Bumb
                                      **RENÉE MARIE BUMB**
                                      **United States District Judge**